IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNE E. TALIGNANI, as Special Administrator of the Estate of David Talignani, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 3:19-CV-1018-MAB |
| vs. | )<br>)<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Anne Talignani, as special administrator of her husband David's estate, brought claims against the United States under the Federal Tort Claims Act ("FTCA"). Ms. Talignani alleges that David underwent neck surgery at Saint Louis University Hospital in January 2016, pursuant to a referral from the Department of Veterans Affairs St. Louis Health Care System ("VA"), and he was negligently given excessive amounts of narcotic pain medication, which led to his death from an overdose shortly after his discharge from the hospital.

This matter is currently before the Court on the United States' motion for summary judgment, arguing that the United States cannot be held liable under the FTCA because the physician who operated on David Talignani was not an employee of the federal government (Doc. 35). For the reasons explained below, the motion is granted.

## FACTS

The VA provides complete medical and hospital service for the medical care and treatment of eligible military veterans. 38 U.S.C.A. § 7301. A majority of the care is provided through medical professionals and support staff employed by the VA and working in VA facilities.[1] The VA also provides care through non-VA community medical providers when necessary, such as when the VA does not provide a specific type of care or service in-house at any of its facilities or the VA cannot provide the care needed in a timely manner (Doc. 35-2).[2] There are a variety of programs for obtaining health care from a community provider (*see* Doc. 35-2).[3] Relevant here is the Individual Authorization, whereby local VA staff determines outside care is needed and requests authorization for the veteran to obtain the service from a community provider (Doc. 35-2).[4] If approved, the local VA staff assists the veteran in arranging care with a community provider that is willing to accept VA payment (Doc. 35-2).[5] The VA then pays the provider on a fee-for-service basis using Medicare's applicable rates, unless the

---

[1] U.S. GOV'T. ACCOUNTABILITY OFFICE, GAO-18-281, VETERANS CHOICE PROGRAM: IMPROVEMENTS NEEDED TO ADDRESS ACCESS-RELATED CHALLENGES AS VA PLANS CONSOLIDATION OF ITS COMMUNITY CARE PROGRAMS, p. 1 (2018) (hereinafter IMPROVEMENTS NEEDED). *See also About VHA*, U.S. DEP'T. OF VETERANS AFFAIRS, https://www.va.gov/health/aboutVHA.asp (last visited Mar. 16, 2021).

[2] IMPROVEMENTS NEEDED, *supra* n. 1, at p. 2; *see also Community Care*, U.S. DEP'T. OF VETERANS AFFAIRS https://www.va.gov/COMMUNITYCARE/programs/veterans/General_Care.asp (last visited March 16, 2021).

[3] *See also* IMPROVEMENTS NEEDED, *supra* n. 1, at pp. 2, 16.

[4] *See also* IMPROVEMENTS NEEDED, *supra* n. q, at p. 16; U.S. GOV'T. ACCOUNTABILITY OFFICE, GAO-16-353, VETERANS' HEALTH CARE: PROPER PLAN NEEDED TO MODERNIZE SYSTEM FOR PAYING COMMUNITY PROVIDERS, p. 10 (2016) (hereinafter "PROPER PLAN NEEDED").

[5] *See also* IMPROVEMENTS NEEDED, *supra* n. 1, at p. 16; PROPER PLAN NEEDED, *supra* n. 4, at p. 10.

community provider has an existing contract and negotiated rates with a VA medical facility (Doc. 35-2).[6] Through the Individual Authorization process, the medical care provided to the veteran is ultimately determined and performed by the non-VA provider, and the VA does not supervise the care provided at the non-VA facility (Doc. 35-2).

David Talignani was a veteran of the United States armed forces and normally received his medical care through the VA (Doc. 1). In October 2015, a neurosurgeon at the VA noted that Mr. Talignani potentially needed neck surgery, namely an anterior cervical discectomy and fusion at C5/6, C6/7 (Doc. 35-2). The doctor further noted that the VA would not be able to schedule the procedure in a timely fashion and recommended that Mr. Talignani be referred to Saint Louis University ("SLU") neurology department for evaluation and treatment (Doc. 35-2). The note indicated that Mr. Talignani preferred SLU because he underwent surgery there on a previous occasion (*Id.*). A Consult Request was initiated, requesting approval for Mr. Talignani to be seen by SLU neurosurgery for "evaluation and treatment" (*Id.*). The Consult Request was approved through an Individual Authorization on October 29, 2015 (Doc. 35-2).

The surgery was performed by Dr. Phillipe Mercier at SLU Hospital (Doc. 35-2). Dr. Mercier, has never been a direct employee of the VA (Doc. 35-1, ¶¶ 5-6). Furthermore, he has never held privileges with the VA St. Louis Health Care System (*Id.*). According to an uncontested affidavit submitted by the Government, the VA "paid for the cost of

---

[6] *See also* PROPER PLAN NEEDED, *supra* n. 4, at p. 10. "Fee for service" is a system of payment in which a health care provider is paid a fee for each particular service rendered. *Fee For Service*, HEALTHCARE.GOV, https://www.healthcare.gov/glossary/fee-for-service/ (last visited March 16, 2021).

the non-VA care, [but] the VA did not supervise the treatment itself, which was performed at SLU Hospital at the direction of the non-VA provider" (Doc. 32-5).

### DISCUSSION

"The United States as sovereign is immune from suit unless it has consented to be sued." *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018). The Federal Tort Claims Act provides a limited waiver of the United States' sovereign immunity and allows suits for money damages against the United States for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment." *Id.* (citing 28 U.S.C. § 1346(b)(1)). A government employee is defined in relevant part by the FTCA as "officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity . . . ." 28 U.S.C. § 2671.[7] The definition specifically excludes "any contractor with the United States." *Id*. Thus, the United States is not liable under the FTCA for the negligent actions or omissions of its independent contractors.

The sole issue before the Court is whether Dr. Phillipe Mercier was a federal employee within the meaning of the FTCA. This issue is a question of federal law. *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995) (citing *United States v. Orleans,* 425 U.S. 807, 814 (1976)); *accord Logue v. United States,* 412 U.S. 521, 528 (1973); *Quilico v. Kaplan,* 749 F.2d

---

[7] The full definition reads: "'Employee of the government' includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18." 28 U.S.C. § 2671.

480, 483 (7th Cir. 1984). The "critical element" in determining whether an individual is a federal employee or an independent contractor is whether the federal government had "the power . . . 'to control the detailed physical performance of the contractor.'" *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018) (quoting *Orleans*, 425 U.S. at 814). And "[t]he key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual." *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir. 1983) (citing *Orleans*, 425 U.S. at 815). *See also Lipsey*, 879 F.3d at 254 (assessing whether the United States Marshal Service was involved in the day-to-day operations of a county detention facility in determining that the facility was an independent contractor).

Here, there is no evidence in the record from which a reasonable factfinder could find that the VA exercised any control over Dr. Mercier. The only evidence in this case are the affidavits from two VA employees submitted by the Government (Docs. 35-1, 35-2). According to those affidavits, Dr. Mercier was never employed by the VA, meaning he was not on the VA's payroll and the VA did not issue him a regular paycheck or provide him with employee benefits. And there is no indication that Dr. Mercier had a written contract or other employment agreement with the VA. Rather, Dr. Mercier billed and was paid by the VA for each of the services he performed.

Furthermore, Dr. Mercier performed surgery on Mr. Talignani at SLU Hospital, which is not a VA facility. In fact, Dr. Mercier never held privileges with the VA St. Louis Health Care System. There is no indication that Dr. Mercier maintained an office at the VA or used support staff, supplies, or equipment furnished by the VA. There is nothing that suggests the federal government physically supervised or controlled Dr. Mercier's

day-to-day operations, such as which patients to see, when and where he saw patients, when and where he performed surgeries, *etc*. Nor did the federal government control Dr. Mercier's medical judgment as it related to the details of Mr. Talignani's care. The VA simply paid Dr. Mercier for the authorized type of care (*i.e.*, "evaluation and treatment") rendered pursuant to his prescribed plan of care.

For these reasons, the Court concludes that no genuine issue of material fact exists as to Dr. Mercier's status as an independent contractor. This decision is consistent with other circuits that have held "physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes." *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996) (collecting cases). Accordingly, the United States cannot be held liable under the FTCA for the actions of Dr. Mercier or SLU Hospital and the motion for summary judgment is granted.

## Conclusion

The motion for summary judgment filed by Defendant United States of America (Doc. 35) is **GRANTED**. Plaintiff's claims under the FTCA are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 17, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**